Good morning. May it please the Court, my name is Eric Weaver. I'm here on behalf of Mr. Taylor. I'd like to reserve a couple minutes. I intend to touch on all three issues, but I wanted to start with the exhaustion issue. I think there are two key points that distinguish this case from Baldwin v. Reese, which is why the district court judge got it wrong. The first is, in Reese, there was no document presented to the Oregon Supreme Court which reflected the underlying ineffective assistance of counsel issue. Here, the Superior Court knew exactly what Mr. Taylor was talking about and addressed that issue in a reasoned decision. That decision, Mr. Taylor then presented to the Supreme Court as part of the exhibits. The Supreme Court is required by its own rules to look at the exhibits that are attached to a petition. So I think that was fairly presenting the issue. Is the difference there, because the Supreme Court says in Baldwin v. Reese, we don't hold the court to look at the opinion below. Is the difference, in your view, that the rules require, the state rules require review of the underlying case? I think there are two differences. One, I think what Reese is saying, which even as a defense counsel I don't think is entirely unreasonable, that they don't have to go dig through the files to figure out what was happening in the lower courts. I think that's what Reese is talking about. It's not a situation where the actual decision is presented to them as an exhibit to this final petition, which actually is what Mr. Taylor was supposed to do under the rules also. I think your point is the second reason why it's important. So the Supreme Court, A, did not have to dig around and see what lower courts had done, and B, it was presented to them and by their own rules they were required to review it. I think in rereading Reese, however, there's an even perhaps more important distinction. In Reese, to argue that it was adequately presented, not that they had to look through under Ilst, they said that the petitioner's argument there was that the ineffective assistance counsel was a term of art, those words, which alerted the State Supreme Court to the nature that it was a Federal issue. There was a distinction between inadequate and ineffective counsel. And the Supreme Court found that under the case law of Oregon it's not established that it is a term of art. In California it is definitely a term of art. The California Supreme Court has said over and over again that an ineffective assistance counsel claim in California is a strickling claim and that we look to the Federal cases in order to decide the issue. So merely using those words is using a term of art under California law, and so therefore I think that that's a very important distinction between this case and Reese. So that even if the Court were not to accept our position that by attaching the exhibit that was enough to alert the Supreme Court of the lower court decision, I think the words because of the fact that it's indisputable that ineffective assistance of counsel is a term of art under California law, that in itself is sufficient. Is this in your brief? I guess I don't remember seeing that, this argument. I don't recall if it is or not, Your Honor. I was just reading Reese in my preparation, and it's right there in the decision. Because I did notice that even the language in the petition doesn't federalize the claim. So on its face it doesn't do what the Supreme Court said in Baldwin v. Reese to say this is a Federal claim or to be Federal law, and that doesn't matter because there's some understanding in California? Actually, now that I think about it, this issue is in the case because the Supreme Court, the California Supreme Court case, which I cited in my brief, was People v. Harris, which is 34 Cal 4th 175 at 205-206. That is in my brief. And that case is just one of many that the California Supreme Court has issued over the years saying that when we look at a ineffective assistance counsel claim, it is a Strickland claim and we are bound by what the Federal decisions hold. If there are no more questions about that particular issue, I'd like to move next to the sentencing issue. I think there's two important points here, and I think setting aside hair-splitting the language and that sort of thing that went on in the lower courts, I think there's two important points. Well, one is does he have three strikes? Did he have three prior strikes? Exactly. Right. And he didn't. And we set that forth in the brief. The 969 packet, which includes his in and out of the sentencing, is he had three strikes, but he didn't have this health, this drug prior, which the court, this district court, made a lot of, put a lot of weight on. I'm not, I'm sorry, the Superior Court. It was very important to the Superior Court judge that you can tell by his colloquy that Mr. Taylor just can't stay out of trouble. And here's this recent example of, yet again, not staying out of trouble. But it definitely was not his prior. Counsel, Judge Gould, with a question. I thought that the district court said that that conviction was in dispute and that regardless of whether he did it, he still had plenty of misdemeanors and felonies, which I think would mean he would be in the three strikes category. It's true that he would be in the three strikes category. And the argument that he made at the sentencing was not that he was not in the three strikes category or that this particular prior made the difference. His argument was that his strikes were a long time ago, that his conduct was of diminishing seriousness, and that a lengthy sentence but not a life without parole, the tantamount to a life without parole sentence would have been appropriate. That's the argument he made. In response, the Superior Court judge says, well, he's got this drug prior. He just, that's pretty serious to me. And I think it's, although the district court said. But, I mean, where does that, because I'm with Judge Gould. What I see is he said, well, I understand this is a matter of dispute, but he says, and I'm trying to quote here, assuming the record is correct, the defendant had been convicted of three misdemeanors and at least three felonies, three prior strikes. But I don't see the judge emphasizing this drug, this recent drug possession charge, possession of drugs for sale. I think if you look at page 12 of the volume 1 of the excerpt of record, that's where the language taken from the decision in People v. Taylor, that's where what the judge said. Also, if you look in the excerpt of record, this is again volume 1, starting at page 62 and to the end of volume 1, that's the sentencing transcript. I think probably rather than me disputing back and forth, I'll definitely trust the court to read those and decide for itself how much importance the superior court placed on that. Okay. Well, counsel said Judge Gould was another question. So isn't there a problem with appellant's position on this? Because it's an AEDPA case so that we can't reverse the state court unless they make a decision that's objectively unreasonable. And if the state court says we don't think the trial court relied on that drug conviction and there's some points in the record supporting that, like his regardless statement, how can we say the state court is being objectively unreasonable? I recognize that that's the key issue for this particular argument. And the point I would say is the fact that the superior court couldn't get it out of its regardless of what it said, it couldn't get it out of its mind that he had suffered this prior conviction. And the district judge couldn't either. He kept saying, well, why wasn't it proved, although it was proved that it wasn't his prior? So the fact that it's so obviously in the back of the mind of the remaining of the judges who looked at this, it seems to me that it's not reasonable to conclude that they weren't affected by the punitive existence of this prior. Do you want to save the rest of your time? Okay. Thank you. Good morning. May it please the Court, my name is Peter Smith. I'm a Deputy Attorney General with the State of California representing Apelli in this matter. With respect to the exhaustion issue, if you look at the petition filed with the California State Supreme Court, the grounds for relief, Mr. Taylor lists only one issue, which is the jury bias issue. He doesn't reference the ineffective assistance of appellant counsel issue in that paragraph, which is paragraph six of the petition. The only time he references ineffective assistance of appellate counsel, actually he says appellant counsel was ineffective, was at paragraph 10 of the petition. He doesn't reference any Federal law, any Federal cases. He doesn't make any argument. He doesn't set forth any facts with respect to the ineffective assistance, this alleged claim of ineffective assistance of appellant counsel. Well, do you disagree? Is that a term of art with the California Supreme Court? No, I don't. Quote, ineffective assistance of counsel, unquote. No, I don't disagree with that. But I do disagree with the fact that the argument that Exhibit C sets forth plainly this issue. My argument is that it doesn't in this context. If you look at the entire petition filed with the Supreme Court, specifically paragraph 13b, Mr. Taylor was asked to list the prior petition he filed with the preceding or lower courts. And in doing so, he mentioned the Sacramento Superior Court case. And he recognized or noted that he had filed a habeas petition and that the only issue he raised in that petition was the juror bias issue. He doesn't mention the ineffective assistance of appellant counsel in 13b. And then in 13b-4 of the petition, he is asked, well, what was the result of that petition? And he said denied. And in that paragraph or in that line, 13b-4, it asks for him to attach the order of the lower court, which he did. So he was directed to attach the lower court, the superior court's decision, as an attachment to demonstrate what happened to the issue of juror bias. He's not attaching that document to support a claim or an allegation of ineffective assistance of appellant counsel. But that document does raise the – does mention the issue of ineffective assistance of counsel, does it not? It does, Your Honor. Under the case that I can't pronounce the last name, Sagaran? Uh-huh. You know the case I'm talking about? Yes. I'm sure I'm mispronouncing it. Then it seems like if the lower court considered it, then it's a done deal. Well, I think if, like the district court said, the superior court – excuse me, Mr. Taylor was fortunate, I think they used the word lucky, that the superior court found that. I think the issue is what is fairly presented to the California Supreme Court in the four corners of that petition. And I think that petition is different than the superior court petition. Certainly, Exhibit C is the lower court's decision, but you have to look at the petition as to why – the California Supreme Court petition as to why it was attached. It wasn't attached to raise a substantive claim of ineffective assistance of appellant counsel. Mr. Taylor was directed by that standard form petition to attach that to demonstrate what happened to the juror bias claim, which is the only issue he references. Counsel, Judge Gould, with a question. Yes. I'm not sure that it really matters what his subjective intent is or whether he's directed to attach it for some other reason. The issue that's of most concern to me is this. The issue has to be fairly presented for exhaustion, but I think it has to be fairly presented not just in the trial court, but to the Supreme Court. So for me, the focus is, is attaching that exhibit of the trial court decision, does that fairly present the issue to the Supreme Court? And I'm not sure that Sandgath case – I don't know if that's the right pronunciation – if that's controlling here, because I read that case. I thought that what it said was that if it's actually decided in the state court, in the trial court, it's exhausted as to that level, that level of court. But it doesn't mean it's exhausted through the Supreme Court. So am I missing something here also? No, I thought Baldwin v. Reese postdated Sandgath so that it's clear that you just have to look at what the Supreme Court got. They have no duty to read anything that they didn't get, but they did get the exhibit. So it seems to me the issue narrows to whether having that exhibit there fairly presents the issue. And I would agree with that analysis, Your Honor, but my argument is that having that attachment in this particular case doesn't fairly present the issue because of the reason why it was attached. And you look for the reason to paragraph 13b of the petition. He, Mr. Taylor, merely attaches that petition to explain why the only issue he claimed he raised at the superior court level was denied. He doesn't attach that document in support of anything else. And I agree with your analysis that you look to the four corners of the petition filed in the state Supreme Court to determine what is fairly presented as to claims. I'm arguing that in this particular instance, the document, the decision of the superior court does not fairly present that issue. Certainly a Supreme Court, by looking at the petition that was filed with the Supreme Court, could reasonably conclude that, oh, you know, we're reading the superior court, and by the way, the superior court decision is split into two parts, jury biased as well as ineffective assistance of counsel. And by reading the entire petition and the fact that he only alleges one claim, jury biased, and that in 13b he only alleges that he raised only one claim in superior court, certainly a reasonable court could conclude that the he's attaching that document to explain or demonstrate what happened in superior court to the only issue he raises in the superior court, excuse me, in the Supreme Court petition. And that's how I see it, Your Honor. Okay. Thank you. Thank you. I just want to briefly discuss the second issue counsel addressed, and that is the sentencing issue. And, again, as the Court acknowledged that the appellee's argument in this instance is that the court of appeals finding that the trial court did not rely on the prior, the subject or question prior, was not an unreasonable determination of facts in this instance. If you look at the record, the trial court started off the sentencing by saying, by acknowledging there was a dispute. And then it went on to indicate that it believed that Mr. Taylor actually sustained this prior offense, this prior drug offense, based on the rap sheet attached to the probation report. But in the next breath, the court said, regardless of that conviction, Mr. Taylor has three misdemeanor offenses and three, excuse me, three misdemeanor convictions and three felony convictions. And then it went on, the trial court went on in great detail describing the significant criminal history of Mr. Taylor's, which included two state prison commitments, three parole violations, and a total of 20 convictions by the time he was 30 years old. During that analysis or during that review, which he took, the court, excuse me, the court took from the body of the probation report, not once did the trial court mention the prior, the subject prior for drug sales conviction. Based on that analysis, the trial court's basis for sentencing Mr. Taylor, the court of appeal found that that review of his criminal history coupled with the use of the word regardless clearly indicated that the trial court was not relying on the subject prior conviction. And the district court agreed. Even though the district court questioned whether or not Mr. Taylor actually sustained this conviction, the issue is whether or not the trial court relied on it and whether or not the court of appeals' decision finding that it did not was an unreasonable interpretation of the facts. The district court could not find that it was an unreasonable interpretation of the facts. And as the district court indicated, it's entitled to deference. And on that, unless the court has any other questions, we would submit it. Judge, I guess I have a question. It may require counsel for the government. If he responds, maybe we could give an extra minute to the appellant. But my question is on the equitable tolling argument, which I saw in the briefs, but I didn't hear you mention it for the appellant in his opening segment. And I was on that Spitzen panel, so I guess I wanted to hear what your views were as to whether this case is distinguishable from Spitzen. And if I could interject on that same note, we now have a Supreme Court case in Holland v. Florida addressing that issue. Perhaps you could explain its effect on this issue as well. I think this case is distinguishable from Spitzen in that the attorney in Spitzen, if I recall, was appointed more than a year before the deadline, the statute of limitations deadline, ran, that he did nothing, absolutely nothing to file a petition. And when his client asked for the file back, he did not give it back for approximately three months, in fact, two months. He kept it for two months after the deadline the statute of limitations had run. He did not communicate with his client either. Holland, in that case, the behavior of the attorney was even worse in that the client was actually directing the attorney on how to file a petition for writ of habeas corpus, citing, I believe, statutes and case law, and was consistently contacting his attorney telling him about the dates and which to file a petition for writ of habeas corpus. The attorney completely ignored the client and let the date, the statute of limitations, run. This case, in this case, and I've gotten to know Mr. Weber, certainly by dealing with this case, is completely different. Mr. Weber's conduct, his handling of this case has been very good, but for one thing, and that is that he missed the deadline to file the petition. That, according to Holland, Your Honor, is ordinary negligence. Ordinary negligence does not warrant equitable tolling pursuant to Holland or Spitson, Fry or Castro. It is simply that. It is ordinary negligence, and for all of us who've practiced long enough, we've all missed dates. It certainly doesn't arise to the level of Spitson and Holland, Your Honors. Any other? Thank you. Thank you. We'll give you a couple of extra minutes. Justice Gould, I want to assure you that I wasn't hiding from this issue. I just ran out of time on the other issues. I figured you just didn't get to it because of the time, and it is covered thoroughly in your briefs, but I'd like to hear your brief oral argument on it, too. And Judge Ikuda will extend your time as she's done. Thank you, Your Honor. I think that first, looking at the Spitson case, Mr. Smith has said that, well, one of the differences was there was a year that lapsed. In this case, it was from May until March. That's almost a year. I think what makes this, I think it can be summed up as I did in my brief in one point. I was appointed for the sole purpose of helping Mr. Taylor exhaust that issue. From the very first request for extension of time, I acknowledged that that's what I was appointed to do. And then through miscalculation and through getting bogged down with the trial counsel who refused to provide me the record, I lost track of that being the issue. It seems to me that if you — How is that more than negligence? I think it's pretty egregious where if an attorney is appointed for one specific task and he doesn't do that task, that seems to be pretty egregious to me. And I think it's not ordinary negligence. I think that I don't see how it can be anything other than a Spitson-like situation when that's the whole purpose of the appointment in the first place. So I don't think it's ordinary negligence. I mean, I hate to say that. I'm embarrassed in front of my colleagues in front of the court. But I think that that's the case. That was the whole point. That's why Mr. Taylor did — he provided me his records. He provided me with everything. I wrote him, assured him I was doing that. I think it's pretty close, if not right on, the Spitson situation. And I'll defer to your expertise on Spitson. I did want to go back to the Baldwin v. Reese issue for just one second. In terms of your question about whether that was raised in the brief, if you look at page 25 of the opening brief, I clearly laid out that the standards are exactly the same, and plus Mr. Smith doesn't dispute that issue. I think in terms of the presentation argument, Respondent makes a very sophisticated argument, but ultimately I think it misses the point. The point of the ineffective assistance of counsel issue, it's not the substantive issue. It's the explanation of why it wasn't raised on direct appeal. So in itself, it's just an exhaustion issue. The substance is a juror misconduct issue. So the question — and I think there's a question of fundamental fairness here as well. If this case gets litigated, the state is entitled to rely on the superior court decision in terms of establishing the standard of reasonableness or not. So if the state can rely on that decision, why can't he rely on that decision as having set forth the issue to the Supreme Court? So all he gets is one reasoned decision in the lower courts, and the Supreme Court is assumed to have adopted that decision. That's how it works. So in this case, the Supreme Court is assumed to have adopted that decision. Counsel, that position doesn't really address what the Supreme Court said in Baldwin v. Reese. Well, I do have to say, was it — you know, not whether under the state law or under our precedent, we'd look through the one-liner to the prior reasoned decision, but whether attaching that order fairly presents the Federal issue to the state Supreme Court. Well, I think that on that particular point, in his substantive — in his claim, the paragraphs 13b that Mr. Smith cited, he specifically asked the court to look at his Exhibit C for an explanation of why — of what the decision was below. And that informed the court that his — this decision had been decided on the basis of Strickland. Again, as I said before, I think that the point of Reese, which in my opinion is a very reasonable one, is that Supreme Courts, which get thousands of petitions, especially the California Supreme Court, which gets 8,500 petitions a year, should not be required to dig through the file boxes to find out what happened below. But if the defendant attaches that decision, as he's requested to do by the instructions to the Supreme Court, that's a different situation because the exhibits are part of the four corners of the petition. And I think that that had the effect of providing him, the Supreme Court, with both the rationale and the authority and the reasoning of the court below, and then the Supreme Court is deemed to have adopted that reasoning. Can you round up now? You're over — well over. Okay. Thank you. I think unless the Court has further questions, the issues have been fully aired. Thank you very much. All right. The case of Taylor v. Evans is submitted.
judges: Mahan, Hall, Gould